## Rynd *versus* Rynd Farm Oil Company.

1. Rynd agreed with Watson for the exclusive right of digging for oil, &c., on a farm, Rynd to have one-fourth, and in case, after a reasonable experiment, Watson should be satisfied that oil, &c., could not be found in quantities profitable to both parties the lease to determine and the possession to revert to Rynd; Watson not to interfere with Rynd's farming; "should oil, &c., be found in profitable quantities this is a perpetual lease." On part of the land the boring, &c., had been profitable; Rynd alleging the working had not been profitable on another part, brought ejectment for that. *Held,* that ejectment would not lie to test Rynd's right to bore for oil, &c.

2. Ejectment under the agreement would lie if Watson had occupied the land for other purposes, or to an extent greater than allowed by the contract, or if the license was revocable or had been forfeited by Watson.

3. When the license was entered upon and made effectual by Watson's performance of the covenants and a successful result of the experiment, it became perpetual and irrevocable.

4. Whether the license was *exclusive*, not decided.

November 23d 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Venango county:* No. 155, to October and November Term 1869.

This was an action of ejectment, commenced April 15th 1868, by John Rynd against the Rynd Farm Oil Company, for about 114 acres of land.

The land in controversy was that part of a tract of 328

[Rynd *v.* Rynd Farm Oil Co.]

acres, lying on the west side of Oil creek. The whole tract belonged to the plaintiff on the 19th day of January 1860. On that day this agreement was made : "Articles, &c., between John Rynd of, &c., of the one part, and Jonathan Watson and Jacob D. Angier of, &c., of the second part, Witnesseth, That the said party of the first part, for and on account of the covenants and agreements hereinafter mentioned, doth covenant and agree, that they, the said parties of the second part, their heirs and assigns, shall have the exclusive right and privilege of digging, boring, or otherwise operating, for salt and oil on the farm and land owned and occupied by the party of the first part, situate in the township of Cornplanter, county of Venango, bounded as follows, &c., containing about 328 acres, more or less, together with the right of obtaining by pumping, or in any other manner collecting said salt-water and oil, and manufacturing salt, refining or otherwise preparing oil for use and the market, with the full and unobstructed right of way to and from all the springs, wells, and other works they may dig, bore or construct, or cause or procure to be dug, bored, erected, constructed or builded on said premises, with the privilege of erecting such buildings and apparatus as may be necessary or convenient for the purpose aforesaid. And the said party of the second part, for themselves, covenant and agree to and with the said party of the first part, that they, the said party of the second part, bore or dig one or more wells, not less than two hundred feet deep, if necessary to obtain salt or oil from the same to the best advantage, working with proper skill and energy for the interests of both parties, and give to the party of the first part the one-fourth part of all the oil obtained on or out of said premises ; and should said second party think proper to engage in the manufacture of salt from any salt water they may find on said land, then they are to give said first party one-twelfth part of said salt so manufactured, said first party to be at no expense whatever, and to receive his share of the oil and salt at the mouth of wells and salt works on the first secular days in each month after oil in profitable quantities shall be found and salt manufactured. And should other valuable minerals be found in boring, digging or operating on said premises for oil and salt, the said party of the first part shall *receive* at the pit's mouth the one-fourth part thereof, to be delivered monthly, in like manner as the oil and salt are delivered, if the business of mining and operating for the said minerals should be found profitable for both parties. The said work of boring, &c., as above stated, to be commenced by the party of the second part within one year from the 1st day of September 1859, and be prosecuted with reasonable diligence and energy until oil and salt be found, or further search be deemed unprofitable and unnecessary ; and in the

case the said second party, after a fair and reasonable experiment and search, be satisfied that oil and salt, or either, cannot be found in sufficient quantities to be profitable to both parties, this lease shall be determined and ended, and the entire possession, with all the improvements made thereon by said second party, &c., shall revert to said first party, &c.; and should the said second party *occupy* any considerable portion of the improved land of said first party, with the works, buildings and apparatus which they may dig, bore, build, erect or construct, to the damage of the said first party, the said second party shall pay to the said first party a reasonable rent or compensation therefor. The said first party expressly reserves so much of said land as lies, &c., * * and should this lease be determined as hereinbefore mentioned, and the possession and improvements revert, it is understood that the said second party may remove their machinery, engines, pumps, &c.; and should oil and salt, or either, be found in profitable quantities, this is a perpetual lease for all the purposes therein mentioned : and further, said first party expressly covenants and agrees that he has not sold or leased any part of the premises herein demised, since the 1st day of September 1859; and *it is further* understood that the said second party are not to interfere with the farming operations of said first party any more than may be necessary and proper to guaranty the said second party the full enjoyment of the premises for the purposes mentioned in this agreement."

The following supplemental agreement was made July 2d 1861:

" I hereby declare and agree that the above-named lessees, &c., shall and may have the right to assign or sub-let the rights and privileges therein and thereby granted to them as to fractional parts of the premises in the above lease or article, to which I add this as a supplement: and further, I, the said John Rynd, &c., do also agree to take my share of the oil and furnish barrels for the same, so as not to impede or hinder the operations or work of the said second party, their heirs and assigns, whenever it may be necessary, on account of room or otherwise desirable, to sell or send away, or put up for market, and any damages for the use of improved land, so far as the parts sub-leased, shall be from this date dispensed with, as the supposed increase of oil, by reason of sub-leasing, will amply compensate for that. It being understood that the said Watson and Angier, &c., are to go on and have the premises heretofore leased surveyed into such sized lots as they may deem proper, and to sub-lease the same to the best advantage, and to have the same worked to the best advantage, either to success or abandonment, and to have the map or plat of said survey made, and to furnish the said Rynd a copy, free of charge."

The agreement was under seal, and signed by both parties.

The defendants derive their title from the above lessees.

[Rynd *v.* Rynd Farm Oil Co.]

On the trial before Trunkey, P. J., Watson testified for defendants that they had commenced operations on the east side, and had taken others into partnership with them; the operations had been successful; the wells on the west side had not been productive; they yielded a little; the failure to get oil there was not conclusive that there was no oil there; they had ceased working on it.

By another witness it was testified that up to 1865, seventeen wells had been sunk on the west side; one was sunk in 1866; the engine had been recently taken away; all the wells were tested; the machinery was moved away from all the wells that did not produce.

The plaintiff, in rebuttal, gave evidence tending to show that the defendants had put buildings, &c., on the land not necessary for carrying on their mining business; they also gave evidence of the failure and abandonment of the wells on the west side and the removal of the machinery; of sub-lettings; the rates of the leasing, &c.

The plaintiff's claim for the 114 acres, was on the ground that it was not occupied by the defendants and was not necessary to work the wells which were yielding oil.

The plaintiff's 1st and 3d points were:—

1. The agreement of 19th January 1860, gave a license to Watson and Angier to take salt and oil from his lands, and was revocable by Rynd at any time.

3. The agreement of 2d July 1861, gave only a license to Watson and Angier to confer the same privilege they had upon third persons, for the benefit of Rynd, and was revocable by him at any time.

These points the court (Trunkey, P. J.) denied, and further said in his charge:—

* * "In very words, Watson and Angier, their heirs and assigns, shall have perpetually the exclusive right of boring and operating for oil and salt on the whole farm, except the part reserved by defined bounds, and may assign and sub-let their right as to fractional parts of the premises; they, their heirs and assigns, may use all the surface necessary and convenient for their full enjoyment and operations under the grant, and not to interfere further with the owner of the land for farming purposes. The consideration for this grant is the covenant already stated on the part of Watson and Angier. They are bound, amongst other things, to commence work by a certain date, to work with skill and energy for the interest of both parties, to deliver a certain portion of the oil or salt to Rynd at certain times, to survey and divide the premises into lots, sub-lease and have them worked to the best advantage. [With such grant, upon such consideration, it would seem that the parties had made the right of the grantees

[Rynd· v. Rynd Farm Oil Co.]

to take the oil and salt exclusive of the grantor, as well as other persons. The important right to divide and sub-let is not consistent with the claim that Rynd retained the right to .take oil and salt in common with the grantees.] This right .was given after he had ample time for reflection and observation of the manner in which the grantees were performing their covenant in the first article. The exclusive right to take oil from the land, and to divide and grant small lots in severalty for oil operations, would be essentially interfered with in case the grantor would go on when and where he pleased to operate for oil.

" [If oil is discovered in paying quantities, and of this no question is made, the grant is perpetual, not of a part, but of the whole, Rynd and those under him reserving the fee simple estate, with right to occupancy of the soil, when the same is not necessary and convenient for the object contemplated by the lease. The article makes no provision for a return of the land in parts, as to oil rights, when oil is not found thereon. It does not provide for forfeiture of the rights granted in whole or in part in case of breach of covenants. The grant and reservations, covenants and restrictions, are similar to those in case of Funk v. Haldeman, 3 P. F. Smith 229. The similitude is such that I do not hesitate to conclude, on the authority of this case, that Rynd granted to Watson and Angier in fee simple, an incorporeal hereditament, made divisible by the terms of the grant, by the parties made exclusive in the grants within the designated lines; that whatever rights are reserved to Rynd for agricultural and other purposes, within the lines, he has no right to take oil or salt therein, and can have none until the grantees and those claiming under them have forfeited their rights by breaches of the covenant.]"

" This action is to cover that part of the tract lying on the west side of Oil creek. It is unnecessary to inquire why it is not for the whole tract, or for all of it not actually operated upon for oil purposes. Whether or not the entire eastern side is operated upon we are not advised, nor is it material. The defence is rested on the same ground as if the action were for the whole instead of a part. The plaintiff may recover this part if the defence is not good. The plaintiff claims a verdict for the land not actually occupied by producing oil-wells, being all except about two acres on the west side of the creek. Rynd has the right of possession and enjoyment of the surface for all purposes, save of so much as may be necessary and convenient for the object of the grant. If oil has been found in profitable quantities, and the granted rights have not been forfeited, the grantees, or the defendants holding under them, have a right of possession to all the surface necessary and convenient for the object given them. Should the evidence satisfy you that the defendants have taken and occupied the land for other purposes than the right given, and that they have ex-

13 P. F. SMITH—26

[Rynd *v.* Rynd Farm Oil Co.]

cluded Rynd from possession of the surface when it is not required for oil operations, preventing him from enjoying the right of which he had not divested himself, then he ought to recover the premises wrongfully taken from him. But if there is not evidence to show that the defendants have taken and held the land to any greater extent than required for their oil operations, and have not otherwise interfered with Rynd's enjoyment of the premises, he cannot recover for this reason : Each party has certain rights, and when one has not wrongfully interfered with the other's premises, there can be no recovery.

"Did the defendants, or Watson and Angier, within the time mentioned in the agreement, make search and find oil in profitable quantities? Have they expended large sums of money in sinking wells? Have they prosecuted the work of obtaining oil with reasonable diligence, obtaining large quantities, averaging some 25,000 or 30,000 barrels annually? If you find they did all this, then although they may have failed to perform the covenant to the full extent, their rights are not forfeited. Forfeitures at law, as well as in equity, are odious. They may be answerable for non-payment of rent for use of improved land, for not making the survey, for not working with greater diligence; but if they have performed their covenants to the extent stated, the grant is not forfeited. It is not a question here how much damage could be recovered in an action of covenant, or whether Rynd contracted with as much or greater wisdom as others who have leased their lands. There is no allegation that the grant was obtained by fraud or imposition, and the defence is not available that he might have had more favorable covenants. You will observe that your attention has been directed to some facts, while there has been little question made as to them. They are for you to pass upon, and under the instructions given, as you find the facts, your verdict will be for the plaintiff or defendant."

The verdict was for the defendants. The plaintiff removed the case to the Supreme Court, and there assigned for error the answers to his 1st and 3d points, and the portions of the charge in brackets.

*E. Cowan* and *H. D. Foster* (with whom was *J. D. Hancock*), for plaintiff in error.—The grant is exclusive and indivisible: Funk *v.* Haldeman, 3 P. F. Smith 229; Dark *v.* Johnson, 5 Id. 164; Grubb *v.* Bayard, 2 Wallace 81; Bainbridge on Mines, &c., 246; Coke Litt. 122; Hargrave's note; Caldwell *v.* Fulton, 7 Casey 480; Lord Mountjoy's case, Godbolt 24; s. c. Anderson 307; Johnstown Iron Co. *v.* Cambria Iron Co., 8 Casey 246; Chetham *v.* Williamson, 4 East 469; Clement *v.* Youngman, 4 Wright 344. If Rynd had revoked the license before the entry of the licensees they could not have maintained a bill in equity;

[Rynd v. Rynd Farm Oil Co.]

their covenants want mutuality : Bodine v. Glading, 9 Harris 50 ; Vincent v. Huff, 4 S. & R. 302; McNair v. Compton, 11 Casey 23.

J. B. Brawley and D. Derrickson, for defendant in error, cited Funk v. Haldeman, Lord Mountjoy's case, supra; Douglass v. Kindall, Yelverton 187 ; Hoskins v. Robins, 2 Saunders 327 ; Potter v. North, 1 Id. 352.

The opinion of the court was delivered, January 3d 1870, by

AGNEW, J.—The most difficult and important question argued in this case is, whether the license to Watson and Angier, to operate for oil, is entirely exclusive of Rynd the owner of the land. But this does not arise in the form of action adopted by the plaintiff. The action is ejectment and relates to the possession only of the land. Assuming that the defendants had taken possession and occupied the premises for other purposes; or to an extent greater than that provided in the contract; or that the license was revocable by Rynd; or had been forfeited by the defendants, the form of action would be a suitable remedy. But the right of Rynd to bore for and take oil from the land cannot be tested in this form of action. Should he attempt to exercise this right, a conflict would arise with the defendants, claiming a right exclusive of Rynd, who might test his claim by an action for a breach of the contract, or possibly by a bill in equity ; but the exclusiveness of their right is not a question in this action.

The court below in clear and explicit language left to the jury the fact whether a possession had been taken by the defendants to a greater extent than was necessary for their oil operation; or so as to interfere with the possession reserved by Rynd to himself. The fact has been found by the jury against the plaintiff, and this leaves only the questions of revocation and forfeiture. We agree with the learned judge, and the authorities cited by the defendants as plaintiffs in error show, that this license, when entered upon and made effectual by the performance of the covenants of the defendants, and a successful result according to the terms of the agreement, is perpetual and irrevocable. We think he also fairly submitted the question of forfeiture with proper instructions, in terms consistent with the provisions of the agreement. That fact being determined against the plaintiff, nothing remains but to affirm the judgment, leaving out of view the question of the exclusiveness of the license. This point not fairly arising in the case, it would be improper to state an opinion, which would not be binding as a decision in a future controversy. It admits of argument, and may not be ruled by Funk v. Haldeman, 3 P. F. Smith 243, but we forbear to express an opinion.

Judgment affirmed.